D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE TORRES,

                      Plaintiff,

        -against-

THE MAJOR AUTOMOTIVE GROUP,
MAJOR WORLD,[1] HAROLD BENDELL,
CHRIS ORSARIS and ADAM COHEN,

                     Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-0687 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Plaintiff Jose Torres brings this action against Defendants Major Automotive Group,

Major World,[1] Harold Bendell, Chris Orsaris, and Adam Cohen (collectively, "Defendants"[2]).

Plaintiff, a former car salesman, claims that Defendants deviated from the terms of his

commission agreement by making unauthorized and undocumented withdrawals from his pay.

Plaintiff alleges multiple causes of action, including violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 et seq., and numerous provisions of the New York Labor Law.

Defendants move to compel arbitration pursuant to Section 4 of the Federal Arbitration Act

("FAA"), 9 U.S.C. § 4. For the reasons set forth below, Defendants' Motion is DENIED.

## I.    BACKGROUND

### A.    The Parties

     Plaintiff Torres is a citizen of New York and resident of Queens. (Compl. (Dkt. 1) ¶ 6.)

---

[1] According to counsel for Defendants, Plaintiff has incorrectly sued Major Chevrolet, Inc. as Major World. (Answer at opening paragraph.) This is ostensibly because Plaintiff was employed by Major Chevrolet, Inc. (Answer ¶ 15.)

[2] Major Automotive Group, Major World, Bendell, and Cohen are represented by the same counsel and join together in the Motion to Compel Arbitration. Orsaris, who has separate representation, has not joined the motion. This distinction has no significance, however, as the motion is denied.

1

Plaintiff had been employed by Major Chevrolet, Inc. as a commissioned auto sales representative. (Answer (Dkt. 9) ¶¶ 15-16.) Defendant Major Automotive Group Inc. is a domestic corporation operating in Queens County in Long Island City, New York. (Compl. ¶ 8.) Defendants Major Automotive Group Inc. and Major World are companies within the Major Auto Group. (Decl. of Lee Squitieri ("Squitieri Decl.") (Dkt. 21-2) ¶ 2.) Defendant Bendell is the President and Defendant Cohen is a Vice President and General Counsel to the companies.[3] (Id.)

Plaintiff alleges that during the course of his employment, Defendants violated the terms and conditions of Plaintiff's commission agreement, made unauthorized and undocumented withdrawals from Plaintiff's pay, and failed to pay Plaintiff overtime compensation for all hours worked in excess of 40 hours per week. (Decl. of Saul D. Zabell in Opp'n to Mot. to Compel ("Zabell Opp'n Decl.") (Dkt. 20-2) ¶ 3.) As a result, Plaintiff alleges that Defendants violated Section 7 of the FLSA, 29 U.S.C. § 207(a)(1), and Articles 6 and 7 of the New York Labor Law, N.Y. Lab. Law §§ 170, 190 et seq. (Compl. ¶¶ 24-26, 28-30, 36-42, 44-48.) Plaintiff also asserts causes of action based on breach of contract, unjust enrichment, and fraud. (Id. ¶¶ 32-34, 50-51, 53-57.)

## B.    The Relevant Agreements

In January 2012, Plaintiff and Defendants signed a one-page "Used Vehicle Salesperson Commission Agreement" (the "Commission Agreement," or the "Agreement"). (Squitieri Decl., Ex. A (Dkt. 21-3).) The Commission Agreement provided that Plaintiff would receive a base salary payable bi-weekly at $20 per day. (Id.) It also set forth a methodology for calculating

---

[3] The relationship between Plaintiff and Defendant Orsaris is not clear from the parties' filings. Orsaris has been incarcerated since March 2010—almost two years before the parties signed the agreement underlying this suit. (Orsaris Answer (Dkt. 24) ¶ 1.)

commissions on vehicle sales earned by the Plaintiff. (Id.) Under the Agreement, Plaintiff's commission was set at 20% of "gross commissionable profit." (Id.)

At the bottom of the page—just above the parties' signatures—the Agreement also contained the following provision: "The company's Arbitration Agreement for non-union employees is in effect and has not been altered by this agreement. A copy of the Arbitration Agreement is printed on the back of this form for your reference." (Id.) Just below the parties' signatures, the Commission Agreement further provided that "[t]his Agreement is intended to set forth the company's pay plans and to clarify existing commission agreements. It does not supersede the terms of any applicable collective bargaining agreement; it is a supplement to and explanation of agreements." (Id.) The Commission Agreement was signed by Plaintiff and a representative for Defendants. (Id.)

The single-page Arbitration Agreement "for Non Union Employees" was printed on the reverse side of the Commission Agreement. (Opp'n to Mot. to Compel (Dkt. 20) at 4.) Under the title at the top of the page, the Arbitration Agreement established, "As of January 11, 2012, This Agreement Supersedes and Replaces All Previous Oral and Written Agreements." (Squitieri Decl., Ex. A.) In the very first paragraph, the Arbitration Agreement contained the following clause:

> ANY DISPUTE OR CONTROVERSY ARISING OUT OF, RELATING TO, OR CONCERNING ANY ASPECT OF MY EMPLOYMENT, INCLUDING BUT NOT LIMITED TO ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE OR BREACH OF MY EMPLOYMENT RIGHTS, SHALL BE SETTLED BY ARBITRATION TO BE HELD IN NEW YORK, NEW YORK IN ACCORDANCE WITH THE EMPLOYMENT DISPUTE RESOLUTION RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. . . . THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE AND BINDING ON THE PARTIES TO THE ARBITRATION.

(Id. ¶ (a).) The same paragraph also provided:

> THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER
> OF EMPLOYEE'S RIGHT TO A JURY TRIAL AND RELATES
> TO THE RESOLUTION OF ALL DISPUTES RELATING TO
> ALL ASPECTS OF THE EMPLOYER/EMPLOYEE
> RELATIONSHIP INCLUDING, BUT NOT LIMITED TO, THE
> FOLLOWING CLAIMS: (I) ANY AND ALL COMMON LAW
> CLAIMS FOR . . . BREACH OF CONTRACT, BOTH EXPRESS
> AND IMPLIED . . . (II) ANY AND ALL CLAIMS FOR
> VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL
> STATUTE OR ORDINANCE, INCLUDING, BUT NOT
> LIMITED TO . . . THE FAIR LABOR STANDARDS ACT . . .
> THE NEW YORK LABOR LAW; AND ALL FUTURE
> EMPLOYMENT LAWS; (III) ANY AND ALL CLAIMS
> ARISING OUT OF ANY OTHER LAWS AND REGULATIONS
> RELATING TO EMPLOYMENT OR EMPLOYMENT
> DISCRIMINATION.

(Id.) Plaintiff claims that he "never saw" the Arbitration Agreement until Defendants supplied it to Plaintiff's counsel in connection with this litigation. (Aff. of Jose Torres in Opp'n to Mot. to Compel ("Torres Aff.") ¶ 7.) The Arbitration Agreement was not signed by either party. (Squitieri Decl., Ex. A.)

## II.     PROCEDURAL HISTORY

Plaintiff filed this Complaint seeking monetary damages and declaratory relief on February 6, 2013. (Compl. at 10.) Plaintiff first requested that Defendants waive service of process pursuant to Federal Rule of Civil Procedure 4(d) via certified mail on February 27, 2013. (Zabell Opp'n Decl., Ex. A.) Having received no response from Defendants, Plaintiff again requested that Defendants waive service via electronic mail on April 24, 2013. (Zabell Opp'n Decl., Ex. B.) Counsel for Defendants ultimately waived service under Rule 4(d) on June 14, 2013. (Zabell Opp'n Decl. ¶ 7; Dkt. 3.) After Defendants failed to answer the Complaint or

otherwise move by their deadline of August 13, 2013, Plaintiff contacted Defendants on August

29, 2013 to inquire regarding the status of Defendants' response. (Sept. 23, 2013, Ltr. (Dkt. 4).)

On August 30, 2013, however, counsel for Defendants sent a demand for arbitration to

Plaintiff's counsel. (Squitieri Decl., Ex. B (Dkt. 21-4).) Plaintiff never responded in writing, but

during a telephone call sometime thereafter, Plaintiff's counsel indicated to counsel for

Defendants that he did not believe Plaintiff was bound by Defendants' demand for arbitration

because the Defendants had not timely filed their answer. (Squitieri Decl. ¶ 8.) In a letter dated

September 23, 2013, Plaintiff conveyed his intent to move for a default judgment, which

Magistrate Judge Cheryl L. Pollak permitted. (Sept. 23, 2013, Order (Dkt. 5).) Plaintiff then

filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55.1 on October

1, 2013, which was entered by the Clerk on October 3, 2013. (Oct. 3, 2013, Entry of Default

(Dkt. 10).) That same day, however, and before the entry of default was docketed and filed,

Defendants filed their Answer. (Squitieri Decl. ¶ 10; Defs.' Answer (Dkt. 9).) As a result, the

Clerk's Entry of Default was vacated. (Id. ¶ 11.) Defendants subsequently filed a Motion to

Compel Arbitration, Dismiss Arbitrable Claims, and Stay any Non-Arbitrable Claims. (Mot. to

Compel (Dkt. 21).) Plaintiff timely filed a memorandum in opposition (Pl. Opp'n to Mot. to

Compel (Dkt. 20), to which Defendants responded. (Rep. in Support of Mot. to Compel (Dkt.

19).)

III.    DISCUSSION

Defendants move pursuant to 9 U.S.C. § 4 to compel arbitration of all claims asserted in

Plaintiff's complaint.[4] Under Section 4, a party "aggrieved by the alleged failure, neglect, or

---

[4] The FAA empowers district courts to compel arbitration, but only where the court has an independent basis for maintaining jurisdiction. See Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012). Here, because Plaintiff alleges claims under the FLSA alongside New York Labor Law and other

refusal of another to arbitrate under a written agreement for arbitration" may file a motion to compel, which a court may grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748-49 (2011) (citing 9 U.S.C. § 4). Plaintiffs oppose Defendants' Motion on three grounds, arguing that: (1) the Arbitration Agreement is invalid as a result of fraud in the factum; (2) FLSA claims are not arbitrable; and (3) Defendants have waived the right to demand arbitration by their delay in responding to the Complaint and the resulting prejudice suffered by the Plaintiff. (Pl. Opp'n to Mot. to Compel at 3.)

A. **Standard of Review**

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012). Since arbitration is a matter of contract between the parties, "courts must rigorously enforce arbitration agreements according to their terms." Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309 (2013) (internal quotation marks omitted). The Second Circuit has instructed, however, that "[i]n the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court." Citigroup Global Mkts. Inc. v. Abbar, --- F.3d ---, 2014 WL 3765867, at *4 (2d Cir. 2014) (quoting Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011)). In determining whether the parties agreed to arbitrate, the appropriate standard of review is equivalent to the summary judgment standard. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also Klein v. ATP Flight Sch., LLP, No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294, *3 (E.D.N.Y.

common law claims, the court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. See, e.g., Chen v. Major League Baseball, --- F. Supp. 2d ---, 2014 WL 1230006, at *9 n.12 (S.D.N.Y. 2014).

July 3, 2014). As a result, "allegations related to the question of whether the parties formed a valid arbitration agreement" are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." Schnabel, 697 F.3d at 113. If, however, "undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, a court may rule on the basis of that legal issue and avoid the need for further proceedings." Marciano v. DCH Auto Grp., --- F. Supp. 2d ---, 2014 WL 1612976, at *3 (S.D.N.Y. 2014) (quoting Wachovia Bank, 661 F.3d at 172). Thus, the summary judgment standard is appropriate "regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." Bensadoun, 316 F.3d at 175. In either case, if there is no genuine issue of material fact as to the making of the agreement for arbitration, then a trial is not necessary. Cf. id.

Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000); see also Application of Whitehaven S.F., LLC v. Spangler, No. 13-CV-8476 (ER), 2014 WL 4494168, at *6 (S.D.N.Y. Sept. 10, 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.") (internal quotation marks omitted). As the Supreme Court has counseled repeatedly, the FAA establishes a "liberal federal policy favoring arbitration agreements." See, e.g., CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012). However, while the federal policy in favor of arbitration "requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration," Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396 (2d Cir. 2009) (internal quotation marks omitted),

7

the FAA "does not require parties to arbitrate when they have not agreed to do so." Schnabel, 697 F.3d at 118 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)). Moreover, "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., --- F.3d ---, 2014 WL 4099289, at *4 (2d Cir. 2014) (quoting Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011)). Therefore, "[i]t is the court's duty to interpret and construe an arbitration provision, but only where a contract is validly formed and legally enforceable". Spangler, 2014 WL 4494168, at *7 (internal quotation marks omitted).

### B.    Choice of Law

Although federal law thus determines the procedural rules governing motions to compel arbitration, the question of which law—federal or state—governs the substantive inquiry as to whether the parties have formed an enforceable agreement to arbitrate is a separate issue. Under Section 2 of the FAA, a written arbitration provision in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[5] While the FAA expresses a strong federal policy in favor of arbitration, however, "the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, but not more so.'" Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (emphasis in original) (internal quotation marks omitted). Accordingly, while the FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement affecting interstate commerce," Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010),

---

[5] The parties do not appear to dispute that that the arbitration agreement at issue affects interstate commerce and is therefore subject to the FAA. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Any arbitration agreement affecting interstate commerce . . . is subject to the [FAA].").

"in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." Nackel, 346 F.3d at 364; see also Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005) ("When contract formation is at issue in an FAA case, we generally apply state-law principles."). This inquiry therefore includes consideration of relevant state law defenses to contract formation, including "fraud, duress, or unconscionability, [which] may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

State contract law is not, however, automatically applied in every case where the validity of contract formation is at issue. As the Supreme Court explained in Perry v. Thomas:

> [S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.

482 U.S. 483, 492 n.9 (1987) (emphasis in original); see also Casarotto, 517 U.S. at 687 ("Courts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration agreements.") (emphasis in original). As a result, while Section 2 of the FAA "preempts state law which treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venez., 991 F.2d 42, 46 (2d Cir. 1993) (internal quotation marks omitted). In so doing, the FAA "places arbitration agreements upon the same footing as other contracts." Schnabel, 697 F.3d at

118; Hirsch v. Citibank, N.A., 12-CV-1124 (DAB), 2014 WL 2745187, at *10 (S.D.N.Y. June 10, 2014).

Because the application of state law depends on whether a particular state's contract law treats arbitration contracts differently in this respect, the question then becomes which state's law applies. Here, there can be no doubt that New York law would apply. See, e.g., Josie-Delerme v. Am. Gen. Fin. Corp., No. 08-CV-3166 (NG), 2009 WL 2366591, at *3 (E.D.N.Y. July 31, 2009). First, neither the Commission Agreement nor the Arbitration Agreement contains a choice of law provision. Second, both Plaintiff and Defendants are residents of New York and signed the contracts at issue in New York, where Defendants maintain an office. And third, neither party argues that the law of another state would be more appropriate.

Under New York law, "parties will not be held to have chosen arbitration 'in the absence of an express, unequivocal agreement to that effect.'" Progressive, 991 F.2d at 46 (quoting Marlene Indus. Corp. v. Carnac Textiles, Inc., 380 N.E.2d 239, 242 (N.Y. 1978)). For nonarbitration agreements, however, New York law requires proof of contract formation only by a preponderance of the evidence. Id. As a result, the Second Circuit has held that "[b]ecause Perry prohibits such discriminatory treatment of arbitration agreements, the rule set forth in Marlene Industries is preempted" by Section 2 of the FAA. Id.; see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 519 (S.D.N.Y. 2001). Accordingly, the Second Circuit has applied the "ordinary" preponderance of the evidence standard in determining whether parties whose agreements are governed by New York law have agreed to arbitrate. Progressive, 991 F.2d at 46.

## C.    Analysis

### 1.    Fraud

Plaintiff's first argument in opposition to Defendants' motion to compel arbitration is that the Arbitration Agreement is invalid as a result of fraud in the factum. (Opp'n to Mot. to Compel at 3.) Specifically, Plaintiff alleges that Defendants misrepresented the legal effect of signing the Commission Agreement in that "Defendants failed to inform Plaintiff that by signing the Agreement, he was bound by the terms and conditions on the back of the form." (Id. at 5.) As a result, according to Plaintiff, "the existence of this misrepresentation creates an issue of fact as to contract formation as a whole and therefore, Plaintiff did not agree to arbitrate."[6] (Id.) Despite Plaintiff's claim of fraud in the factum, however, his allegations—if proven—would actually constitute fraud in the inducement. As the Second Circuit has pointed out, "[t]he distinction between fraud in the factum and in the inducement is basic: Fraud in the factum occurs when the maker [of a note] is tricked into believing that which he is signing is something other than a promissory or obligatory note. By contrast, fraud in the inducement consists of misrepresentations that cause the maker of the note to enter into the transaction." Revak v. SEC Realty Corp., 18 F.3d 81, 91 (2d Cir. 1994) (internal quotation marks omitted). A claim of fraud in the factum is appropriate only in those "rare cases" where "'the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect.'" Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (quoting Revak, 18 F.3d at 91) (internal quotation marks omitted). Thus Plaintiff's allegations "are not of the type that could support a

---

[6] Reviewing the evidence in the light most favorable to the Plaintiff, the non-moving party, see Klein, 2014 WL 3013294, *3 (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004)), the court interprets this claim to mean that Plaintiff alleges fraud with regard to the Arbitration Agreement, not the entire Commission Agreement. See infra note 7.

claim for fraud in the factum." Ipcon, 698 F.3d at 62 n.5 ("Nowhere does [plaintiff] allege that [defendant] changed the documents after they were signed; that [defendant] claimed it had authority to enter into the agreements when it in fact did not; or that [defendant] misrepresented the enforceability of the contract.") (internal citation omitted).

Even construed as a claim of fraud in the inducement,[7] however, Plaintiff's allegations lack factual support. "A party has made out a claim of fraudulent inducement if it has pled (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." Ipcon, 698 F.3d at 62 ("By alleging that [defendant] knew at the time of signing that it did not intend to abide by the contract and deceived [plaintiff] into thinking that it would abide by the contract, [plaintiff] has stated the first two elements of fraud in the inducement.") (internal citations and quotation marks omitted).

Plaintiff has failed to allege any misrepresentation or that Defendants intended to deceive him. Instead, he claims that because he was not educated in the United States and that English is not his primary language, Plaintiff "did not fully comprehend" the Commission Agreement. (Opp'n to Mot. to Compel at 4-5.) Consequently, according to Plaintiff, Defendants misrepresented the legal effect of the agreement when they "neglected to explain and ensure Plaintiff comprehended the agreement." (Id. at 5.) Ultimately, Plaintiff argues, the misrepresentation "going to the very character of the proposed contract" was that "Defendants failed to inform Plaintiff that by signing the Agreement, he was bound by the terms and

---

[7] Plaintiff's allegations can be fairly interpreted as a claim of fraud in the inducement with respect to the arbitration clause. This is an important observation. Regarding Section 4 of the FAA, the Supreme Court has held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of a contract generally." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006). Here, because Plaintiff appears to allege fraud in the inducement of the arbitration clause itself, this court is permitted to adjudicate the claim.

conditions on the back for the form." (Id.) As a matter of New York law, this cannot constitute

a misrepresentation, as "in the absence of fraud or other wrongful act on the part of another

contracting party, a party who signs or accepts a written contract is conclusively presumed to

know its contents and to assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144,

149 (2d Cir. 2004) ("Thus, even if [plaintiff] did not understand the form or had questions about

the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns

addressed before signing [the agreement]."); see also Nichols v. Wash. Mut. Bank, No. 07-CV-

3216 (JG)(VVP), 2007 WL 4198252, at *7 (E.D.N.Y. Nov. 21, 2007). As a result, Plaintiff has

failed to prove the existence of a genuine issue of material fact as to whether the Arbitration

Agreement was procured by fraud.

      2.   Contract Formation

The absence of fraud, however, is not dispositive of the Defendants' motion. Although

the Plaintiff's argument with respect to fraud is incorrect as a matter of law, Plaintiff does

nonetheless (and perhaps, unintentionally) identify a crucial issue with respect to contract

formation.[8] While Plaintiff insists that Defendants failed to inform him that by signing the

Commission Agreement "he was bound by the terms and conditions on the back of the form,"

(Opp'n to Mot. to Compel at 5), it is unclear whether Plaintiff was ever bound by the terms and

conditions on the back of the form in the first place. First, it seems clear that the Commission

Agreement and the Arbitration Agreement are separate agreements.[9] Second, it is equally clear

---

[8] "Notably, the Agreement signed by Plaintiff does not state that Plaintiff agreed to the terms and conditions of the Arbitration Agreement by signing the Agreement. Instead, according to the 'Used Vehicle Salesperson Commission Agreement,' the Arbitration Agreement was printed on the back of the Agreement for Plaintiff's reference." (Opp'n to Mot. to Compel at 4 (emphasis in original).)

[9] The language of the Commission Agreement itself supports this finding. First, it provides, "The company's Arbitration Agreement for non-union employees is in effect and has not been altered by this agreement." (Squitieri Decl., Ex. A.) This presupposes the existence of an Arbitration Agreement outside the context of the Commission Agreement. If the Commission Agreement does not affect the Arbitration Agreement, and the Arbitration Agreement already existed before the parties entered into the Commission Agreement, then the Commission and

that Plaintiff did not sign the Arbitration Agreement itself. (Squitieri Decl., Ex. A.)

Consequently, this court must address the question of whether Plaintiff, in signing the

Commission Agreement, was therefore bound by a separate Arbitration Agreement, which was

mentioned in the Commission Agreement, but was not independently signed by either party.

> a.   Incorporation by Reference

It is well established that "a nonsignatory party may be bound to an arbitration agreement

if so dictated by the 'ordinary principles of contract and agency.'" Clarendon, 152 F. Supp. 2d at

519 (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)). In

particular, the Second Circuit has found that "parties to a contract are plainly free to incorporate

by reference, and bind themselves inter sese to, terms that may be found in other agreements."

Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 97 (2d Cir. 2002) ("Indeed, we

have specifically found that parties were bound to arbitrate under arbitration clauses they never

signed, where those clauses were contained in other documents that were incorporated by

reference.") (citing Progressive, 991 F.2d at 47); see also Clarendon, 152 F. Supp. 2d at 520 ("A

nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate

when the nonsignatory is party to a separate contractual relationship with the signatory to the

arbitration agreement which incorporates the existing arbitration clause.").

"Under New York law and the law of [the Second] Circuit, two essential elements must

be satisfied before a document will be deemed to have been incorporated by reference into

another instrument or agreement. First, the agreement must specifically reference and

sufficiently describe the document to be incorporated, such that the latter 'may be identified

beyond all reasonable doubt.'" Ryan, Beck & Co., LLC. v. Fakih, 268 F. Supp. 2d 210, 223

---

Arbitration Agreements must be separate. Second, the Commission Agreement establishes, "It does not supersede
the terms of any applicable collective bargaining agreement; it is a supplement to and explanation of agreements."
(Id.) As a supplement agreement that does not supersede any other, the Commission Agreement is clearly separate.

(E.D.N.Y. 2003) (emphasis in original) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201

(2d Cir. 1996) (citing Chiacchia v. Nat'l Westminster Bank USA, 507 N.Y.S.2d 888, 889-90

(App. Div. 1986))).[10] "Second, 'it must be clear that the parties to the agreement had knowledge

of and assented to the incorporated terms.'" Id. (quoting Bybyk, 81 F.3d at 1201); see also

Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank, No. 12-CV-2683 (RWS),

2013 WL 4856199, at *3 (S.D.N.Y. Sept. 10, 2013) ("In addition to language explicitly

identifying the referenced document, there must also be language that 'clearly communicate[s]

that the purpose of the reference is to incorporate the referenced material into the contract[,]

rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as

background law.'") (quoting Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d

1339, 1345 (Fed. Cir. 2008)). In conducting this analysis, "New York courts interpret arbitration

---

[10] This standard somewhat complicates the choice of law analysis. As discussed supra, in Progressive, the Second Circuit held that Section 2 of the FAA preempts New York law with respect to the standard of proof in determining whether parties have agreed to arbitrate, as New York imposes a different standard on contract formation for arbitration agreements. 991 F.2d at 46 (observing that New York requires "an express, unequivocal agreement"). Thus, after Progressive, the standard under the FAA in New York is proof by a preponderance of the evidence. See id. An issue arises, however, when a party seeks to establish the existence of an agreement to arbitrate by demonstrating that terms from another document providing for arbitration have been incorporated into a signed writing. See TradeArbed, 282 F.3d at 97. Significantly, under New York law the document to be incorporated must be identified "beyond all reasonable doubt." See, e.g., Bybyk, 81 F.3d at 1201. Since New York courts apply this standard to all agreements—including arbitration contracts—it would seem that this rule would not conflict with Section 2 of the FAA. See Progressive, 991 F.2d at 46. Yet applying this standard would mean that although a party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence, if that party must show that the agreement exists because arbitration terms were incorporated by reference, the referencing document must identify the incorporated document "beyond all reasonable doubt"—a higher standard. See Norcast S.ar.l. v. Castle Harlan, Inc., No. 12-CV-4973 (PAC), 2014 WL 43492, at *5 n.3 (S.D.N.Y. Jan. 6, 2014) ("There is some question . . . about whether the FAA preempts these standards.").
    The issue therefore becomes whether it is possible for these two standards to coexist. If a party's burden is only a preponderance of the evidence, but one of the elements must be proven beyond a reasonable doubt, that party is effectively held to a higher standard of proof, at least for that element. This outcome is obviously in tension with the law regarding burden-of-proof requirements in civil actions. See, e.g., In re Food Mgmt. Grp., LLC, 372 B.R. 171, 188 (Bankr. S.D.N.Y. 2007) ("Under New York law, in order to prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) breach of the contract by the defendant, (3) performance by the plaintiff unless excused or precluded and (4) damages resulting from that breach. Each of these elements must be proven by a preponderance of the credible evidence.") (internal citations omitted); Matthew Bender, et al., 4 Modern Federal Jury Instructions: Civil, Instruction 73.01 (Burden of Proof) ("The party with the burden of proof on any given issue has the burden of proving every disputed element of his claim . . . by a preponderance of the evidence."). This court need not resolve this issue, however, since the agreement in question clearly identifies the incorporated agreement beyond a reasonable doubt, and thus satisfies the higher standard.

agreements in the same way that they do other agreements—to give effect to the parties' intent and reasonable expectations based on the language used in the agreement." Norcast S.ar.l. v. Castle Harlan, Inc., No. 12-CV-4973 (PAC), 2014 WL 43492, at *5 (S.D.N.Y. Jan. 6, 2014). "In a case involving a contract dispute, a motion for summary judgment will be granted only if the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012) (quoting Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008)). "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." Id. (quoting Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir. 2000)).

Here, the language in the Commission Agreement easily satisfies the first requirement for incorporation by reference. First, the clause incorporating the Arbitration Agreement identifies it by noting that the "company's Arbitration Agreement for non-union employees is in effect." See Progressive, 991 at 47 ("The use of capitalized letters . . . indicates to any reasonable person that a specific document is being referenced.") Moreover, it points out that "[a] copy of the Arbitration Agreement is printed on the back of this form for your reference," and the agreement on the reverse page is clearly titled "Arbitration Agreement For Non Union Employees." Thus, the Commission Agreement not only "specifically and directly identifies" the Arbitration Agreement for non-union employees by name, see id., 991 F.2d at 47, but it also explicitly indicates where the terms of the Arbitration Agreement can be found, and conveniently provides them on the reverse page. That Plaintiff claims he never saw the Arbitration Agreement is irrelevant. See Hirsch v. Citibank, N.A., 542 F. App'x 35, 37 (2d Cir. 2013) ("We have held that 'receipt of a physical document containing contract terms or notice thereof is frequently deemed,

in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms.'") (quoting <u>Specht v. Netscape Commc'ns Corp.</u>, 306 F.3d 17, 31 (2d Cir. 2002)); <u>Serrano</u>, 863 F. Supp. 2d at 165 ("A party is under an obligation to read a document before accepting its terms and cannot avoid the effect of the document by asserting that he or she did not read or understand the contents of the document."); <u>see also</u> <u>Matter of Ferrara S. p. A.</u>, 441 F. Supp. 778, 781-82 (S.D.N.Y. 1977) ("There is no doubt that the quoted legends on the face of [the agreement] are sufficient to give notice to a reasonably prudent person of the arbitration provision and other things appearing on the back."), <u>aff'd sub nom.</u> <u>Ferrara, S.P.A. v. United Grain Growers, Ltd.</u>, and <u>Fratelli Moretti Cereali, S.P.A. v. United Grain Growers, Ltd.</u>, 580 F.2d 1044 (2d Cir. 1978).

There is, however, a genuine issue of material fact regarding whether the parties assented to the incorporated terms—the second requirement. <u>See</u> <u>Intesa Sanpaolo</u>, 2013 WL 4856199, at *3 ("[W]hile express identification of a document is a <u>necessary</u> condition for incorporation of that document, it is not a <u>sufficient</u> one.") (emphasis in original); <u>Fakih</u>, 268 F. Supp. at 223 ("there must be a clear manifestation of an intent to be bound by the terms of the incorporated instrument"). "The mere fact that a contract refers to another contract does not mean that it has 'incorporated' the other contract." <u>MBIA Ins. Corp. v. Patriarch Partners VIII, LLC</u>, 842 F. Supp. 2d 682, 706 (S.D.N.Y. 2012); <u>see also</u> <u>Rosenblum v. Travelbyus.com Ltd.</u>, 299 F.3d 657, 666 (7th Cir. 2002) ("Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate . . . ."). Here, the Commission Agreement provides only that the Arbitration Agreement, "for non-union employees," "is in effect," and that it "has not been altered" by the Commission Agreement. Most importantly, the meaning of the phrase "is in effect" is ambiguous. "Contract language is

ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Compagnie Financiere, 232 F.3d at 158. In this case, it is objectively unclear whether the parties simply meant to acknowledge the existence of another agreement (to emphasize that its validity would not change as a result of adopting the Commission Agreement) or whether the parties meant to legally incorporate the terms of the Arbitration Agreement. See, e.g., Intesa Sanpaolo, 2013 WL 4856199, at *4 ("While the . . . language quoted . . . does specifically identify the [agreement], it does not evince an intent to incorporate . . . ; rather, the reference to the [agreement] reads as an acknowledgment of that document for the purposes of identifying the relevant rights and interests . . . .").

In addition, neither party has presented any evidence as to whether Plaintiff was a member of a union or whether he was a non-union employee. As a result, the court has no basis for determining whether the Arbitration Agreement would apply to the Plaintiff even if it were validly incorporated. See Indus. Window Corp. v. Fed. Ins. Co., 565 F. Supp. 2d 513, 517-18 (S.D.N.Y. 2008) (finding that an agreement governing "all disputes between the City and the Contractor", even if incorporated, did not apply to subcontractors). Moreover, the fact that the Commission Agreement does not "alter" the Arbitration Agreement adds further ambiguity to the relationship between the agreements.[11] If anything, this provision evokes the substance of a

---

[11] There is some evidence suggesting that the Arbitration Agreement was drafted or revised on January 11, 2012, the same day Plaintiff signed the Commission Agreement. See Squitieri Decl., Ex. A ("As of January 11, 2012, This Agreement Supersedes and Replaces All Previous Oral and Written Agreements"). As another court has explained, however:

> Even though several instruments relating to the same subject and executed at the same time should be construed together in order to ascertain the intention of the parties, it does not necessarily follow that those instruments constitute one contract or that one contract was accordingly merged in or unified with another so that every provision in one becomes a part of every other. It does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties.

merger clause, which cuts against the idea that the Commission and Arbitration Agreements should be read together. See MAT Movies & Television Productions GMBH & Co. Project IV KG v. RHI Entm't Distribution, LLC, 752 F. Supp. 2d 373, 378 (S.D.N.Y. 2010) ("As is the case in all merger clauses, the reference to other documents including the contract with the arbitration clause simply assures the continued vitality of those documents and prevents their being merged into the subsequent Agreement.") (quoting Rosenblum, 299 F.3d at 665). While these ambiguities alone support a finding that the Arbitration Agreement was not incorporated into the Commission Agreement, the rule that any ambiguity "must be interpreted against the drafter," Industrial Window, 609 F. Supp. 2d at 338, compels the conclusion that a triable issue exists as to whether the parties agreed to arbitrate.

Finally, the Commission Agreement explains that the purpose of printing the Arbitration Agreement on the back is "for [Plaintiff's] reference." (Opp'n to Mot. to Compel at 4; Squitieri Decl., Ex. A.) This only enhances the ambiguity surrounding the parties' intent. As other courts have explained, "the mere use of the word 'reference' is insufficient to manifest the requisite intent for an incorporation by reference." Federated Mut. Ins. Co. v. Woodstock '99, LLC, 140 F. Supp. 2d 225, 229 (N.D.N.Y. 2001). Likewise, that the Arbitration Agreement was printed on the back of the Commission Agreement for the Plaintiff's reference is insufficient to demonstrate the parties' intent to incorporate the Arbitration Agreement, even in light of the preceding sentence stipulating that the Arbitration Agreement "is in effect."[12] Still, "a requirement that

---

Rosen v. Mega Bloks Inc., No. 06-CV-3474 (LTS)(GWG), 2007 WL 1958968, at *5 (S.D.N.Y. July 6, 2007) (report and recommendation) (quoting 11 Williston on Contracts § 30:26 (4th ed.)), adopted in part, 2008 WL 2810208 (S.D.N.Y. July 21, 2008). While Defendants might have drafted the Arbitration Agreement on the same day Plaintiff signed the Commission Agreement, this fact does little to affect the ambiguity regarding whether the parties intended to incorporate the Arbitration Agreement. See id.

[12] One might reasonably ask why the Arbitration Agreement was printed on the back, if not for the purpose of adding terms and conditions to the Commission Agreement. See Patriarch Partners, 842 F. Supp. 2d at 706 ("A contract interpretation 'that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.'") (quoting LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195,

contract language be explicit or otherwise clear and precise does not amount to a rule that contracting parties must use a rote phrase or a formalistic template to effect an incorporation by reference." Northrop Grumman, 535 F.3d at 1345 ("Our Circuit likewise does not require 'magic words' of reference or incorporation."). In fact, a number of courts in the Second Circuit have held that documents were incorporated by reference despite the absence of formalistic declarations such as "Contract A is hereby incorporated by reference into Contract B." See, e.g., Progressive, 991 F.2d at 46 (holding "Subject to the Facultative Reinsurance Agreement" sufficient to incorporate by reference); Laureate Educ., Inc. v. Ins. Co. of the State of Pa., No. 11-CV-7175 (CRK), 2014 WL 1345888, at *7 (S.D.N.Y. Mar. 31, 2014) (finding valid incorporation where contract stated that "[t]he premium for this policy is based upon the statement of values provided"); McDermott v. Great Am. Alliance Ins. Co., No. 02-CV-607 (NAM), 2005 WL 2437020, at *3 (N.D.N.Y. Sept. 30, 2005) (holding "As per Statement of Values on file" sufficient to incorporate by reference). Cf., e.g., Rosenblum, 299 F.3d at 665-66 (clause that provided "This Agreement together with the other agreements and documents to be delivered pursuant to this Agreement constitute the entire agreement" did not incorporate by reference); Packer v. TDI Sys., Inc., 959 F. Supp. 192, 195, 198 (S.D.N.Y. 1997) (contract providing that "we refer to the promissory note (the "Note") in the principal amount of $500,000 dated November 18, 1992" did not incorporate the terms of the Note).

Nonetheless, it is not possible at this stage to conclude as a matter of law that language providing that the "Arbitration Agreement for non-union employees is in effect" manifests an

206 (2d Cir. 2005)). It is far from clear, however, that a finding against incorporation by reference renders this provision superfluous. As discussed supra, there are multiple reasonable interpretations regarding the purpose of this provision, which renders its meaning ambiguous, and thus insufficient to support a motion to compel arbitration. See Compagnie Financiere, 232 F.3d at 158 ("Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.").

intent to incorporate the Arbitration Agreement into the Commission Agreement.[13]  Accordingly,

there remains a genuine issue of material fact with respect to whether the parties have agreed to

arbitrate, and as a result, Defendants' Motion to Compel Arbitration is denied.[14]

*   *   *

Because the court has denied Defendants' motion on contract formation grounds, there is

no need to consider Plaintiff's additional arguments regarding the arbitrability of FLSA claims or

whether Defendants have waived any right to compel arbitration.

---

[13] The Second Circuit has held that under New York law, where a contract fails to incorporate another document by reference, district courts may "properly look to the prior course of dealings between the parties to determine [their] contractual intent." New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 30-31 (2d Cir. 1997) ("Evidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms.") (citing Restatement (Second) of Contracts § 223 (1979)). "Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before." Id. at 31 ("On this basis, a factfinder could reasonably infer that the parties have impliedly incorporated this understanding into their subsequent contracts."). Plaintiff alleges that he was hired by Defendants in or about January 2005, implying that he had worked for Defendants for nearly seven years before signing the Commission Agreement. (Compl. ¶ 15.) As a result, it is likely that the parties have some prior dealings together. In the absence of any evidence regarding an earlier agreement or instance of arbitration, however, there is nothing before the court to support the finding that the parties implicitly incorporated an understanding with respect to arbitrating future disputes.

It is worth noting that—in addition to a prior course of dealings—a party can submit evidence of a custom or practice in the industry to support the finding of an agreement to arbitrate. See, e.g., Aceros Prefabricados, 282 F.3d at 101 ("A provision for arbitration can be implied from a course of past conduct or the custom and practice in the industry.") (quoting Schubtex, Inc. v. Allen Snyder, Inc., 399 N.E.2d 1154, 1156 (N.Y. 1979)). Here, not only have the parties failed to provide any evidence with respect to the custom or practice regarding commission agreements for used car salespersons, it is also unclear whether such evidence would support a finding as to Plaintiff's—as opposed to Defendants'—intent. See id. ("The logic of this rule is obvious: a merchant in a given industry will have, by definition, a difficult time establishing either subjective or objective 'surprise' regarding a proposed contract term that is standard in that industry.") (emphasis added).

[14] The court has not decided, however, to convert Defendants' Motion to Compel Arbitration into a motion on behalf of Plaintiff to prevent arbitration. In other words, the court is unwilling to hold as a matter of law that no reasonable jury would find these parties agreed in the Commission Agreement to arbitrate. Most significantly, the parties themselves did not brief the question of whether the Commission Agreement incorporated the Arbitration Agreement; they simply assumed it did. In addition, the Commission Agreement does not contain a merger agreement preventing the introduction of extrinsic evidence as to the parties' intent. As a result, the parties may be able to submit evidence regarding, for example, whether Plaintiff was a non-union employee, or provide testimony to explain their intent with respect to the provision in question. See, e.g., Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 69 (2d Cir. 2008) ("Even though a document may be fully integrated with respect to the ultimate terms of the agreement, the meaning of those terms may remain unclear. In such cases, it is proper to consider extrinsic evidence in interpreting the ambiguous terms, irrespective of the parol evidence rule.") (internal citation and quotation marks omitted). Whether these parties agreed to arbitrate is therefore a question of fact to be determined at a later stage.

## IV.    CONCLUSION

For the reasons set forth above, the court is unable to determine on the basis of the record now before it whether the parties agreed to arbitrate the claims advanced in Plaintiff's Complaint. Therefore, Defendant's Motion to Compel Arbitration is DENIED, and the parties are directed to advise the court by letter within thirty (30) days regarding the appropriate next steps to be taken in order to determine whether the arbitration clause is enforceable.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York            NICHOLAS G. GARAUFIS
          September 24, 2014              United States District Judge